IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHANIE SUTTLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 19 C 4541 |
| ) | |
| STEPHEN CALK and ) | Judge Joan H. Lefkow |
| THE FEDERAL SAVINGS BANK, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Stephanie Suttle has sued Stephen Calk and The Federal Savings Bank ("TFSB") for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, its implementing Federal Reserve Board Regulation Z, 12 C.F.R. Pt. 226 ("Regulation Z"), the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.,* common law fraud, and promissory estoppel. Defendants move to dismiss plaintiff's first amended complaint for failure to state a claim. (Dkt. 19.) The motion is denied.[1]

## BACKGROUND[2]

In 2016, Suttle began working with NFM Lending to refinance her and her ex-husband's home mortgage to pay off her ex-husband's interest in their marital home following their

---

[1] The court has federal question jurisdiction over Plaintiff's federal law claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a). (Plaintiff does not invoke diversity jurisdiction, although it may exist.) Venue is proper in this district under 28 U.S.C. § 1391(b) because all of the defendants are located in the district, a substantial part of the events or omissions giving rise to the claim occurred in the district, and a substantial part of the property that is the subject of the action is situated in the district.

[2] The following recitation of facts is taken from the well-pleaded allegations in Suttle's first amended complaint, which facts are presumed true for purposes of this motion. *See Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).

divorce. Suttle communicated with Calk about her plans to refinance because Calk was an old friend and the president of TFSB. On or about October 15, 2016, Calk solicited Suttle's home mortgage refinance business.

To obtain Suttle's business, Calk represented that he had experience, wanted to help, was a friend, and that TFSB would be cheaper and more efficient than other banks or lenders, among other representations. Suttle relied on these representations and abandoned her application with NFM Lending to complete her loan transaction with Calk and TFSB.

Suttle informed Calk that she had access to $330,000 in an IRA to buy out her ex-husband's interest in the home but needed another $60,000. She told Calk that she would have to replace the money in her IRA within 60 days to avoid significant penalties. Calk advised her to complete a loan application that would allow TFSB to issue a mortgage secured by her home to pay back the IRA in time to avoid penalties.

Thereafter, Calk instructed Suttle to wire $417,000 to TFSB to pay off the mortgage with her ex-husband. On October 21, 2016, before Suttle signed any loan documents, Suttle transferred $417,000 to TFSB. Subsequently, Calk informed Suttle that he would wait for her direction to pay off her ex-husband. Despite this communication, on or about October 26, 2016, prior to her execution of any loan documents, Calk transferred $395,000 to Suttle's ex-husband without her knowledge or consent.

Suttle did not receive the loan documents until October 28, 2016. After she received the documents, defendants applied intense pressure on her to sign. Defendants sent Suttle multiple messages, e-mails, and phone calls until she signed. The documents that Suttle signed did not reflect the loan agreement that the defendants promised.

Instead of the mortgage refinance loan that Calk promised, Suttle received a one-year, high-interest bridge loan. But she was unaware of the nature of the transaction because the terms of the loan documents were unclear, inconspicuous, and impossible to understand. In addition, Suttle did not receive mandatory disclosure forms required under TILA.

Shortly thereafter, Suttle contacted Calk for the funds to repay her IRA to avoid the early withdrawal tax penalties. Calk informed Suttle that he was unable to return her money because TFSB had paid her ex-husband and the funds she transferred to TFSB were being held as collateral (presumably for the loan to Suttle).

Suttle was charged a $9,840 administration fee for making the loan and has been billed 5% of the $417,000 principal on a monthly basis, which is automatically deducted from her cash collateral. She was not informed of, nor did she knowingly agree to, any of the loan terms, fees, or arrangements.

On July 5, 2018, Suttle sent the defendants a written notice to rescind the transaction. The defendants did not respond, and this action followed.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim on which relief may be granted. In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009); *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007).

The allegations in the complaint must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. At the same time, the plaintiff need not plead legal theories; it is the facts that count. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010); *see also Johnson* v. *City of Shelby*, 574 U.S. 10, 135 S. Ct. 346, 346 (2014) (per curiam) ("Federal pleading rules call for a short and plain statement of the claim showing the pleader is entitled to relief; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.").

## ANALYSIS

### I.  Truth-in-Lending-Act Claims (Counts I and II)

Suttle's TILA claim primarily rests on her allegations that she was entitled to two copies of a notice of the right to rescind that disclosed the material terms of the loan, the security interest in the home, the right to rescind, how to rescind, the effects of rescission, and the date the rescission option expired, as required by 15 U.S.C. § 1635 and Regulation Z, 12 C.F.R. § 226.23.[3] She did not receive those disclosures and therefore, she argues, may invoke her right to rescind the transaction within three years under 12 U.S.C. § 1635(a), (f). Defendants argue that Suttle's TILA claim fails because the transaction of which she complains involves a "residential mortgage transaction," which is exempt from TILA's disclosure and rescission provisions. *See Dunn* v. *Bank of Am. N.A.*, 844 F.3d 1002, 1005 (8th Cir. 2017); *French* v. *Wilson*, 446 F. Supp. 216, 218 (D.R.I. 1978); *Saldate* v. *Wilshire Credit Corp.*, 268 F.R.D. 87, 96 (E.D. Cal. 2010).

TILA is a federal consumer protection statute intended to promote the "'informed use of credit' by assuring 'meaningful disclosure of credit terms to consumers.'" *Ford Motor Credit*

---

[3] Suttle incorporates other allegations related to her "bait and switch" claims that are not germane to the disclosure requirements of TILA. At least, Suttle does not argue that Calk's oral representations violate any specific disclosure requirement.

4

*Co.* v. *Milhollin,* 444 U.S. 555, 559, 100 S.Ct. 790 (1980) (*quoting* 15 U.S.C. § 1601(a)). Pursuant to Congressional authority, the Federal Reserve Board promulgated Regulation Z, which sets forth detailed disclosure requirements to be made in consumer credit transactions.

TILA and Regulation Z extend special protections to homeowners, including a right of rescission for any loan transaction in which the borrower's principal dwelling is used as security. *See* 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23. Under Regulation Z, a creditor is required to "deliver two copies of the notice of the right to rescind to each consumer entitled to the right to rescind." 12 C.F.R. § 226.23(b)(1). The notice "shall be on a separate document that identifies the transaction" and shall "clearly and conspicuously" disclose the consumer's right to rescind the transaction. *Id.* If proper disclosures are made, the homeowner's rescission period ends at "midnight of the third business day following consummation [of the loan], delivery of the notice [of the right to rescind], or delivery of all material disclosures, whichever occurs last." 12 C.F.R. § 226.23(a)(3). If the required notice or material disclosures are not delivered, the right to rescind shall expire three years after consummation. *See* 12 C.F.R. § 226.23(a)(3).

Defendants' argument, that the loan transaction is exempt from TILA's disclosure and rescission provisions, fails. *See* 12 U.S.C. § 1635(e). Under § 1635(x), a residential mortgage transaction means "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." According to Regulation Z, a residential mortgage transaction "does not include a transaction involving a consumer's principal dwelling if the consumer had previously purchased and acquired some interest to the dwelling, even though the consumer had not acquired full legal title." 12 C.F.R. Pt. 226, Supp. I, Subpt. A § 226.2(a)(24)5(i). "Examples

5

of new transaction involving a previously acquired dwelling include . . . an extension of credit made to a joint owner of property to buy out the other joint owner's interest." *Id.* at (ii).

Suttle specifically alleges that she obtained the extension of credit from TFSB to buy out her ex-husband's interest in their marital home. Even if TFSB had provided the loan Suttle requested, it would not have been exempt from TILA. More to the point, the consumer credit transaction reflected in the documents attached to defendants' motion is not a residential mortgage transaction and is therefore subject to Regulation Z, including the rescission rules of § 226.23. See 12 C.F.R. Pt. 226, Supp. I, Subpt. A § 226.2(a)(24)5(ii).

Suttle contends that she has a right to rescind the transaction under 12 C.F.R. § 226.23(a)(1) and, because defendants failed to provide her with two copies of a notice of the right to rescind as required by subsection (a)(2), she properly rescinded on July 5, 2018, within the three-year window allowed by subsection (a)(3). Consequently, Suttle has sufficiently pleaded facts to survive a motion to dismiss.[4]

## II. State Law Claims

Suttle's complaint asserts state law claims for violation of the ICFA (Count III), for common law fraud (Count IV), and promissory estoppel (Count V). For the following reasons, the court denies defendants' motion to dismiss.[5]

---

[4] Defendants' argument in reply that Regulation Z does not apply because it is not rational and that the transaction at issue is a multipurpose one could have been raised in its opening memorandum but was not, so it will not be considered here. *Narducci* v. *Moore*, 572 F. 3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find an argument raised for the first time in a reply brief is forfeited.").

[5] Defendants do not mention Rule 9(b) and have thereby waived its requirements. *Omans* v. *Manpower, Inc.*, No. 11 C 8178, 2012 WL 1565339, at *5 (N.D. Ill. May 2, 2012) ("Defendant did not move to dismiss this count on Rule 9 grounds, and Rule 9 objections are thereby waived."); *United Nat. Records, Inc.* v. *MCA, Inc.*, 609 F. Supp. 33, 38–39 (N.D. Ill. 1984) ("A party who fails to raise a Rule 9(b) objection normally waives the requirement."); *see also Gensler* v. *Strabala*, 764 F.3d 735, 739 (7th Cir. 2014) (declining to affirm dismissal of complaint on the alternative ground that it lacked sufficient particularity because appellee did not invoke Rule 9(b)).

### A. Applicability of the ICFA (Count III)

Defendants move to dismiss Suttle's ICFA claim, arguing that it fails to state a claim under Maryland law. Federal courts hearing state law claims under supplemental jurisdiction apply the forum state's choice of law rules to select the applicable state substantive law. *McCoy* v. *Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014). Illinois applies the Restatement (Second) of Conflicts of Laws to determine which state's law should apply. *Ruiz* v. *Blentech Corp.*, 89 F.3d 320, 323 (7th Cir. 1996). Section 148 of the Restatement outlines factors to consider "when the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made…." These include:

a. The place, or places where the plaintiff acted in reliance upon the defendant's representations;
b. The place where the plaintiff received the representations;
c. The place where the defendant made the representations;
d. The domicile, residence, nationality, place of incorporation and place of business of the parties;
e. The place where a tangible thing which is the subject of the transaction between the parties was situated at the time; and
f. The place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148 (1971).

The general approach to Section 148, described in comment j, states that, "[i]f any two … of the contacts, apart from the defendant's domicile, state of incorporation or place of business, are located wholly in a single state, this will usually be the state of the applicable law with respect to most issues…. [T]he same would be true if any two of the other contacts mentioned immediately above were located in the state in question even though this state was not the place where the plaintiff received the representations." *Id*. Suttle alleges facts supporting more than two of these factors: that the defendants made the representations in Illinois; received and held on to her $417,000 cash security in an account in Illinois; and instructed her to make payments to

an account in Illinois. This is sufficient at the pleading stage to establish that Illinois law applies.[6] As the defendants do not argue for dismissal based on the sufficiency of pleading the claim for violation of the ICFA, the claim survives.

### B. Common Law Fraud (Count IV)

Suttle alleges that she signed the contract in justifiable reliance on the defendants' false statements that she would be offered a standard mortgage refinance loan in a cheaper and more efficient manner than NFM Lending could provide because she trusted Calk based on his employment history, their personal relationship, and his assurances. Defendants argue that Suttle could not have justifiably relied on the defendants' statements after she signed loan documents (filed with the motion to dismiss[7]) that specify the term, interest rate, and fees associated with the loan, in contradiction of her allegations.

Suttle's allegations amount to a claim of fraud in the inducement of contract. When a contract is induced by fraud, it is voidable. *See Halla* v. *Chi. Title & Tr. Co.*, 104 N.E.2d 790,

---

[6] The court is not conclusively ruling that Illinois law applies. Such a ruling is not necessary—indeed, not appropriate—based on the limited facts currently before the court. In concluding that the district court improperly dismissed an ICFA claim of non-resident members of a putative class, the Seventh Circuit explained in *Morrison*:

> Perhaps [the alleged facts are] not enough to *compel* a conclusion that Illinois law applies; * * * But if we can't say that the complaint and answer contain enough to point unerringly to Illinois law, we can say that the complaint does not defeat application of Illinois law. … [The district court] did not take evidence, make findings of fact, or weigh the incommensurable factors in [the] formula; it was not entitled to do any of these things on a motion to dismiss the complaint.

*Morrison* v. *YTB Int'l, Inc.*, 649 F.3d 533, 535 (7th Cir. 2011).

[7] Exhibits to a motion to dismiss that are referred to in the complaint and are central to a plaintiff's claims are to be considered on a motion to dismiss just as if the plaintiff had attached them as exhibits to her complaint. *Wright* v. *Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). When allegations in a complaint conflict with exhibits attached to a motion to dismiss that are considered, the exhibits control when they reveal facts that foreclose recovery as a matter of law. *Whirlpool Fin. Corp.* v. *GN Holdings, Inc.*, 873 F. Supp. 111, 123 (N.D. Ill. 1995), *aff'd*, 67 F.3d 605 (7th Cir. 1995).

795 (Ill. 1952) (noting "the familiar rule that a contract induced by fraud is… voidable at the election of the party claiming to have been defrauded"); *Cannon* v. *Burge*, 752 F.3d 1079, 1091 (7th Cir. 2014) (same). Under Illinois common law, "in order to constitute 'fraud invalidating a contract' a representation (1) must be one of material fact which has been made for the purpose of inducing the other party to act, (2) must be known to be false by the maker, but reasonably believed to be true by the other party, and (3) must be relied upon by such other party and acted upon to his damage." *Ainsworth Corp.* v. *Cenco Inc.,* 437 N.E.2d 817, 821, 107 Ill. App. 3d 435, 439 (1982) (citations omitted). The existence of a written agreement does not prohibit the court "from inquiring into surrounding circumstances to ascertain whether it was fairly made and accurately reflected the intention of the parties." *Id.*

Despite the conflict between her allegations and the loan documents, recovery is not foreclosed as a matter of law because Suttle claims to have been induced to sign the documents by Calk's false statement of material fact that she had been provided a standard mortgage refinance loan and his pressuring her to sign (evidence of his intent to induce). As pleaded, Suttle's common law fraud claim survives the motion to dismiss.

### C. Promissory Estoppel (Count V)

Defendants seek dismissal of Suttle's promissory estoppel claim on the basis that she cannot pursue a quasi-contractual claim where an express contract exists. To state a claim for promissory estoppel under Illinois law, a plaintiff must prove the following: "(1) defendant made an unambiguous promise to plaintiff; (2) plaintiff relied on such promise; (3) plaintiff's reliance was expected and foreseeable by defendants; and (4) plaintiff relied on the promise to its detriment." *Newton Tractor Sales, Inc.* v. *Kubota Tractor Corp.*, 906 N.E.2d 520, 523–24, 233 Ill. 2d 46, 51, (2009). Promissory estoppel is available only where there is no express

9

contract. *See Prodromos* v. *Poulos*, 560 N.E.2d 942, 948, 202 Ill. App. 3d 1024, 1032 (Ill. App. Ct. 1991) ("As a rule, plaintiffs cannot pursue quasi-contractual claims where there is an express contract between the parties."); *Prentice* v. *UDC Advisory Servs., Inc.*, 648 N.E. 2d 146, 150, 271 Ill. App. 3d 505, 511 (Ill. App. Ct. 1995)("[I]f a party's performance under a written contract is the same performance which satisfies the requirement of detrimental reliance, then that party is barred from seeking redress under the doctrine of promissory estoppel.")

Suttle alleges that "Calk unambiguously promised [to] get her a mortgage refinance loan at lower cost and faster than the one she was currently applying for with NFM Lending," but TFSB provided a one-year loan with a higher interest rate. TFSB's performance under the written agreement, then, is not the same as the performance Calk promised, so the claim is not foreclosed by the principle on which defendants rely. Suttle also alleges facts sufficient to infer that she relied on Calk's promise by withdrawing her application with NFM Lending and using TFSB, that her reliance was expected and foreseeable because she needed the loan quickly and trusted Calk, and that her reliance was to her detriment because it caused her to suffer damages in the form of fees, interest, and IRA withdrawal penalties. These allegations are sufficient to permit an inference that TFSB is liable under this theory.

## CONCLUSION

For the reasons stated above, the motion to dismiss is denied. The case will be called for a scheduling conference on September 29, 2020 at 11:00.

Date: September 9, 2020

_____
U.S. District Judge Joan H. Lefkow