**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STEPHANIE SUTTLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 19 cv 4541 |
| v. | ) | |
| | ) | |
| STEPHEN CALK and THE FEDERAL | ) | Judge Joan H. Lefkow |
| SAVINGS BANK, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF FILING

To:     John D. Galarnyk
        Andrew J. Cuniff
        John Romanucci

PLEASE TAKE NOTICE that, on February 25, 2021, the attached Defendant The Federal Savings Bank's Response to Plaintiff's Motion for Judgment on the Pleadings as to Liability Under TILA was filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division.

                                        **STEPHEN CALK and THE FEDERAL**
                                        **SAVINGS BANK**


                                        By      /s/   Daniel S. Hefter
                                                One of Their Attorneys

Daniel S Hefter
**HEFTER LAW, LTD.**
22 W. Washington
Suite 1500
Chicago, IL 60603
(312) 264-6565
dhefter@hefter-law.com

Dated: February 25, 2021

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| STEPHANIE SUTTLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 19 cv 4541 |
| v. | ) | |
| | ) | |
| STEPHEN CALK and THE FEDERAL | ) | Judge Joan H. Lefkow |
| SAVINGS BANK, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT THE FEDERAL SAVINGS BANK'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS AS TO LIABILITY UNDER TILA**

**INTRODUCTION**

The plaintiff, Stephanie Suttle ("Suttle"), has moved for a partial judgment on the pleadings

holding that defendant The Federal Savings Bank ("TFSB") is liable to her under the Truth in

Lending Act, 15 U.S.C. § 1601, *et seq.*, and its implementing regulation, Regulation Z, 12 C.F.R.

Part 226, for failing to rescind her loan when she demanded that TFSB do so. As demonstrated

below, the motion should be denied because, as a matter of law, TFSB's loan to Suttle is exempt

from TILA'S disclosure and rescission requirements.

TFSB recognizes that it must overcome two obstacles in order to convince this Court that the

motion for judgment on the pleadings should be denied. One of those obstacles is that this Court

held. when ruling on the defendants' motion to dismiss the Amended Complaint, that, "According

to Regulation Z, a residential mortgage transaction "does not include a transaction involving a

consumer's principal dwelling if the consumer had previously purchased and acquired some interest

to the dwelling, even though the consumer had not acquired full legal title." 12 C.F.R. Pt. 226, Supp.

I, Subpt. A § 226.2(a)(24)5(I). Regulation Z does not say that**.** That is a quote from an official staff

interpretation of Regulation Z; not from Regulation Z itself. TFSB believes that, if the Court will consider on its merits TFSB's argument below, the Court will be convinced that that interpretation is not rational and, therefore, that it should not be followed.

But the obstacle that TFSB must overcome before it can even try to convince the Court that its prior holding was wrong is the Court's statement at the telephonic court appearance on February 3 that, whether or not the Court was wrong, there is nothing the Court can do about it now because the "law of the case" doctrine precludes it from even considering whether its prior holding was erroneous. As demonstrated below, that is incorrect, and the Court can and should consider the merits of TFSB's argument that the loan at issue in this case is exempt.

**ARGUMENT**

**I.    THE LAW OF THE CASE DOCTRINE HAS NO APPLICABILITY TO A CASE THAT HAS NEVER BEEN APPEALED**

The law of the case doctrine deals solely with cases that have already been considered by a court of appeals and/or the Supreme Court and are remanded to a lower court. The doctrine does not apply to a district court reconsidering its own interlocutory holdings in a case that has never been appealed to determine whether those holdings are legally erroneous and, if so, correcting those errors to save the parties the trouble of having to appeal and to save the court of appeals the trouble of having to correct errors of law that the district court could have corrected on its own. Such self-correction by district courts before appeal is not only permitted; it is strongly encouraged.

In *Surprise v. Saul*, 968 F.3d 658 (7th Cir. 2020), the Seventh Circuit held:

> The law of the case doctrine thus requires a lower court "to conform any further proceeding on remand to the principles set forth in the appellate opinion unless there is a compelling reason to depart."

2

*Id.*, at 663.  *Accord, Dobbs v. DePuy Orthopaedics, Inc.*, 885 F.3d 455, 458 (7th Cir. 2018).

The law of the case doctrine thus stands in stark contrast to (a) the power of a district court to correct its own erroneous legal rulings before any appeal has been taken, and (b) the unambiguous statements by both the Supreme Court and the Seventh Circuit that a district court should do so.  For example, in *United States v. Dieter*, 429 U.S. 6, 8, 97 S. Ct. 18, 19, 50 L. Ed. 2d 8 (1976), the Supreme Court noted "the wisdom of giving district courts the opportunity promptly to correct their own alleged errors", and in *United States v. Ibarra*, 502 U.S. 1, 112 S. Ct. 4, 116 L. Ed. 2d 1 (1991), the Supreme Court noted that, in a prior case:

> We pointed out the presumed benefits of this rule-district courts are given the opportunity to correct their own alleged errors, and allowing them to do so prevents unnecessary burdens being placed on the courts of appeals.

*Id.*, 502 U.S. at 5, 112 S. Ct. A5 6.

Indeed, to that end, the Federal Rules of Civil Procedure permit district courts to correct their own errors of law even after entry of a final judgment.  In *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746 (7th Cir. 1995), the Seventh Circuit held:

> Rule 59(e) permits a district court to entertain a motion to alter or amend a judgment. A claimant can invoke the rule to direct a court's attention to matters such as...a manifest error of law... .  The rule essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.

*Id.*, at 749 (citation omitted).

So if this Court erred in its ruling on the motion to dismiss by holding that the loan at issue in this case is not exempt, there is (a) no legal impediment to the Court now correcting that error, and (b) strong encouragement by both the Supreme Court and Seventh Circuit to do so.  This Court should, therefore, consider the merits of TFSB's argument that the loan at issue in this case is exempt

from TILA's disclosure and rescission requirements.

## II.    THE LOAN AT ISSUE IN THIS CASE IS EXEMPT BECAUSE IT IS A RESIDENTIAL MORTGAGE TRANSACTION

The problem that Congress tried to address by enacting TILA's disclosure and rescission requirements was that of unscrupulous home improvement companies getting consumers to sign papers granting mortgages in their homes without their knowledge that that's what they were doing.

> Prior to passage of the Act the extent of home improvement frauds was staggering, with costs to consumers, according to the National Better Business Bureau report for 1965, totalling somewhere between $500 million and $1 billion annually. Hearings on S.J.Res. 130, S. 3065 and S. 3066 Before the Senate Commerce Committee, 90th Cong., 2d Sess., ser. 90-64, at 75 (1968), in Unfair Practices in the Home Improvement Industry and Amendments to the FTC Act (1968) [hereinafter cited as Hearings on S.J. 130].  During Congressional debate it was noted that:

>> [M]isrepresentations are made directly to the borrower by the mortgage discount lender or a broker who offers to arrange home improvement repairs or consolidation of all homeowner's debts into "one easy monthly payment." * * * [I]n many cases [the homeowner] is never informed nor aware that his home is being made subject to a mortgage. 114 Cong.Rec. pt. 2, 1611 (1968) (remarks of Representative Cahill).

*N. C. Freed Co. v. Bd. of Governors of Fed. Reserve Sys.*, 473 F.2d 1210, n. 12 at 1214 (2d Cir. 1973) (emphasis added). *Accord, Heuer v. Forest Hill State Bank*, 728 F. Supp. 1199, 1200–01 (D. Md. 1989), *aff'd*, 894 F.2d 402 (4th Cir. 1990); *Betancourt v. Countrywide Home Loans, Inc.*, 344 F. Supp. 2d 1253, 1260–61 (D. Colo. 2004).

Borrowers are, of course, aware, when they borrow to buy or build a home, that they are using the home as collateral for the loan.  That is why TILA exempts (a) **all** home acquisition loans and (b) **all initial** construction loans, but not loans for construction work on existing homes.  The statutory exemption applies to any "residential mortgage transaction" defined as follows:

4

> The term "residential mortgage transaction" means a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer' dwelling to finance the acquisition or initial construction of such dwelling.

15 U.S.C. § 1602(x).

The primary purpose of the loan at issue in this case was to finance the plaintiff's acquisition of her ex-husband's interest in their former marital home. (Doc. #17, ¶18.) Although a small portion of the loan ($68, 513.53) was used for other another purpose, $329,762.81 was used for the acquisition. (Doc. #37, ¶20.) The law is clear that, if a loan is used for home acquisition or initial construction, the fact that a portion of the loan proceeds are used for another purpose, does not remove the loan from the acquisition/initial construction exemption. *See, e.g., Infante v. Bank of Am. Corp.*, 468 F. App'x 918, 921 (11th Cir. 2012); *Heuer v. Forest Hill State Bank*, 728 F. Supp. 1199, 1200–01 (D. Md. 1989), *aff'd*, 894 F.2d 402 (4th Cir. 1990); *Perkins v. Cent. Mortg. Co.*, 422 F. Supp. 2d 487, 490 (E.D. Pa. 2006); *Zakarian v. Option One Mortg. Corp.*, 642 F. Supp. 2d 1206, 1214 (D. Haw. 2009); *Kravich v. Wells Fargo Home Mortg.*, 2010 WL 582116, at *3 (E.D. Cal. 2010); 12 C.F.R. pt. 226, Supp. I, Subpart A, § 226.2(a)(24)(6).

Congress authorized the Federal Reserve Board to issue regulations under TILA, which the Federal Reserve Board did by promulgating Regulation Z. *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 100 S. Ct. 790, 63 L. Ed. 2d 22 (1980). The Federal Reserve Board, in turn, authorized its staff to issue official staff interpretations of Regulation Z. (Id.) Regulation Z provides, as does TILA itself, that any "residential mortgage transaction" is exempt, 12 C.F.R. § 226.23(f)(1), and defines "residential mortgage transaction" as:

> Residential mortgage transaction means a transaction in which a mortgage, deed of

5

trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained in the consumer's principal dwelling to finance the acquisition or initial construction of that dwelling.

12 C.F.R. § 226.2(a)(24).

Congress may authorize administrative agencies to promulgate regulations to "fill in the gaps" in statutes, and administrative agencies may authorize their staffs to issue interpretations to "fill in the gaps" in regulations. *Ford Motor Credit Co. v. Milhollin*, *supra*. Because each successively lower level of delegation is solely for the purpose of "filling in the gaps" in higher levels of legislation or rule-making, a lower level is not legitimate, and is not to be enforced, if it is "irrational" in relation to the purpose and language of each higher level. *Ford Motor Credit Co. v. Milhollin*, *supra*, 444 U.S. at 565, 100 S. Ct. At 797. Courts have not hesitated to disregard sub-statutory levels of regulation or interpretation in this area when they found the lower level to be irrational. *See, e.g., In re Smith-Pena*, 484 B.R. 512, 528 (Bankr. D. Mass. 2013) and *In re Stanley*, 315 B.R. 602, 615 (Bankr. D. Kan. 2004) (both disregarding a provision of Regulation Z found to be irrational).

A distinction drawn by a regulation implementing a statute, or by staff interpretation of a regulation, must either be rational or irrational; there is no middle ground. "Rational" means "based on logic". Black's Law Dictionary (11th ed. 2019). "Rational" is the opposite of "arbitrary". *See, e.g., Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 128 S. Ct. 2146, 2147, 170 L. Ed. 2d 975 (2008); *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074, 145 L. Ed. 2d 1060 (2000). A distinction drawn by a staff interpretation of a regulation can be "rational" only if there is a rationale for it – *i.e.*, a logical argument that the distinction created by the staff interpretation is (a) premised on some identifiable, legitimate principle and (b) consistent with the regulation and the

statute. There is no rationale for the staff interpretation of Regulation Z at issue here. It is unprincipled, and is contrary to TILA and Regulation Z.

The statute and the regulation both limit the exemption with regard to construction loans to **initial** construction loans, but do not so limit it with regard to acquisition loans. As demonstrated above, that is consistent with the purpose of the statute, which was to deal with the problem that home improvement companies were taking mortgage interests in their customers' homes without their knowledge. So a mortgage loan used for an acquisition that is not an **initial** acquisition is exempt pursuant to TILA itself given the well-established rules of statutory construction. Because the statute (and the regulation) expressly modify "construction" by the term "initial", but do not so modify "acquisition", a staff interpretation that did so modify "acquisition" would be irrational. That is precisely what the staff interpretation at issue here purports to do. It provides that all initial acquisition loans are exempt, but that some acquisition loans are not exempt just because they are non-initial. It says:

> The term does not include a transaction involving a consumer's principal dwelling if the consumer had previously purchased and acquired some interest to the dwelling... ."

(12 C.F.R. § Pt. 226, Supp. I, Subpt. A(2)(a)(24)(5).

The fact that the comment finishes that sentence by saying "even though the consumer had not acquired full legal title" does not change the fact that the distinction created by the comment is between (a) those persons who "had previously purchased and acquired some interest to the dwelling" and (b) those persons who had not. When a rule is set forth and is followed by the words "even though", the words that follow "even though" do not, either logically or grammatically, narrow the scope of the rule. To the contrary, both logically and grammatically, the words "even though"

indicate that the words that follow are included as a subset of the set governed by the rule that might, but for the "even though" proviso, be thought to be exempt from the rule stated before the words "even though".  Consider, for example, the sentence, "The exclusionary rule excludes illegally obtained evidence even though the police officer subjectively believed he had a right to search the suspect's house."  The rule is that which is stated by the words that precede "even though", and what follows the words "even though" is simply a subset of what is covered by the rule that might otherwise be thought to constitute an exception the rule announced in the words that precede "even though".

So the distinction made by the official comment at issue here is between all persons who "had previously purchased and acquired some interest to the dwelling" and all those who had not.  So under the staff interpretation, an acquisition loan to a person who had previously "purchased and acquired" either a full or partial interest in the home (whether or not the person had disposed of that interest before the loan in question was made) would be non-exempt, while an acquisition loan to a person who had previously obtained an interest in the home by gift or inheritance (*i.e.*, a person who had "acquired" an interest in the home but had not "**purchased and** acquired" that interest) would be exempt whether that person had disposed of that interest in the interim or whether that interest was a partial interest that the person still owned at the time of the acquisition loan in question.  The distinction finds no basis in TILA, Regulation Z, or logic.  It is entirely irrational.  No principle supports it.  It is arbitrary.  As far a research by counsel for TFSB has disclosed, no court has ever enforced it.  The fact that the author of the interpretation gives two examples of the operation of the rule announced in the interpretation one of which fits the situation here is of no consequence.  It is the rationality of the **rule** announced in the interpretation that is at issue; not

8

whether, if rational, that rule would apply to this particular situation. The staff interpretation purports to create the following completely arbitrary categories of acquisition loans:

| Exempt | Non-Exempt |
|--------|------------|
| Borrower never owned any full or partial interest in the home OR borrower previously owned a full or partial interest in the home obtained by gift or inheritance | Borrower had, in the past, purchased and owned a full or partial interest in the home, had sold that interest (or had had that interest foreclosed upon, or gave it away), and is now buying back a full or partial interest in the home |
| Borrower currently owns a partial interest in the home obtained by gift or inheritance | Borrower currently owns a partial interest in the home obtained by purchase |

## CONCLUSION

The distinction drawn by the staff interpretation is not rational, and it is not, therefore, the law. The loan at issue is a "residential mortgage transaction" exempt from the disclosure and rescission requirements of TILA and Regulation Z. The plaintiff's motion for judgment on the pleadings as to liability on her TILA count should, therefore, be denied.

THE FEDERAL SAVINGS BANK

By_____/s/ Daniel S Hefter_____
One of Its Attorneys


Daniel S Hefter
**HEFTER LAW, LTD.**
22 W. Washington
Suite 1500
Chicago, IL 606062
(312) 264-6565
dhefter@hefter-law.com

Dated: February 25, 2021

9

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that, on February 25, 2021, the foregoing Defendant The Federal Savings Bank's Response to Plaintiff's Motion for Judgment on the Pleadings as to Liability Under TILA was served on counsel for the plaintiff via the Court's electronic filing and service system.

/s/ Daniel S. Hefter
Daniel S. Hefter
