IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE SUTTLE | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | No. 19 cv 4541 |
| STEPHEN CALK and THE FEDERAL SAVINGS BANK | ) ) ) ) | Judge Joan H. Lefkow |
| Defendants. | ) ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNTS I AND II OF THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(C)**

NOW COMES Plaintiff, STEPHANIE SUTTLE ("Stephanie"), by and through her attorneys, GALARNYK & ASSOCIATES, LTD., and in support of her Motion for Judgment on the Pleadings as to Counts I and II of the Amended Complaint Pursuant to Fed. R. Civ. P. 12(C), states as follows:

### I. THE PURPOSE OF THE TRUTH IN LENDING ACT IS MUCH BROADER THAN DESCRIBED BY DEFENDANTS.

1. Contrary to Defendant's suggestions, the Truth in Lending Act ("TILA") affords broad protections to consumers in order to prevent predatory lending practices and tactics. "It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit. . . ." 15 U.S.C.A. § 1601(a). "The purpose of this regulation is to promote

the informed use of consumer credit by requiring disclosures about its terms and cost. The regulation also includes substantive protections. It gives consumers the right to cancel certain credit transactions that involve a lien on a consumer's principal dwelling, regulates certain credit card practices, and provides a means for fair and timely resolution of credit billing disputes." 12 C.F.R. § 226.1.

2. "The purpose of the TILA is to promote the 'informed used of credit' by consumers. Congress sought to assure 'a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him.'" *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 220 (1981) quoting 15 U.S.C. § 1601. *See also Mourning v. Fam. Publications Serv., Inc.*, 411 U.S. 356, 377 (1973)("The Truth in Lending Act reflects a transition in congressional policy from a philosophy of 'Let the buyer beware' to one of 'Let the seller disclose.' By erecting a barrier between the seller and the prospective purchaser in the form of hard facts, Congress expressly sought 'to. . . avoid the uniformed use of credit.'"); *Balderos v. City Chevrolet,* 214 F.3d 849, 852 (7th Cir. 2000) ("[TILA's] purpose is to enable borrowers to determine the cost of credit so that they can decide, in the case of a purchase (as distinct from a free-standing loan), whether to pay cash or to borrow from or through the seller or from another lender (and thus pay cash to the seller), who may charge a lower interest rate.").

3. In its Response, FSB asserts that Congress' intentions in enacting TILA's disclosure and rescission requirements was directed specifically against the scourge of home improvement scams. *Response*, ps. 4, 7 [Docket #65].

4. In fact, Congress intended to obligate lenders to clearly disclose loan terms to a much broader consumer population. *See Gibson v. Bob Watson Chevrolet-Geo, Inc.*, 112 F.3d 283, 285 (7th Cr. 1997)(explaining that TILA's purpose is "to protect consumers from being misled

about the cost of credit."). Here, both the loan that Stephanie was promised and the loan she actually received fall within the umbrella of credit transactions that TILA was designed to protect.

### II. THE PLAIN LANGUAGE OF TILA SUPPORTS STEPHANIE'S POSITION AND THIS COURT'S SEPTEMBER 9, 2020 RULING.

5. FSB suggests that the Court should ignore the Official Staff Interpretations of Regulation Z. *Response*, ps. 6,7,8, and 9 [Docket #65]. Even if the Court accepted this advice, which it should not, the plain language of TILA supports the Court's September 9, 2020 ruling.

6. The statute provides: "Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Bureau, of his intention to do so." 15 U.S.C.A. § 1635(a). In this case, Stephanie and the Defendants entered into a consumer credit transaction secured by her home. The base provision of the statute clearly applies.

7. The Defendants argue, however, that Stephanie's loan is exempt based on 15 U.S.C.A. § 1635 (e)(1), which provides that "This section does not apply to. . . . a residential mortgage transaction as defined in section 1602(w)[1] of this title." 15 U.S.C.A. § 1635 (e)(1).

---

[1] Section 1602(w) has been redesignated as section 1602(x).

8. Under the plain language of the statute, this was not a "residential mortgage transaction." "The term "residential mortgage transaction" means a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C.A. § 1635 (x).

9. As the Ninth Circuit has written, "the statutory and regulatory text is unambiguous. . . . . [U]nder the plain language of the statute, a residential mortgage transaction is one in which the mortgage is created to finance either (1) the initial construction of the dwelling or (2) any acquisition or reacquisition of the dwelling." *Barnes v. Chase Home Fin., LLC*, 934 F.3d 907 (9th Cir. 2019).

10. Stephanie's loan was neither for the acquisition of her home (which she already owned) or for the initial construction of her home (which was already built). It therefore does not meet the plain language definition of a "residential mortgage transaction" and is not exempt from rescission under TILA.

11. There is no factual dispute as to the purpose of Stephanie's loan. In her Amended Complaint, she alleges "In 2016, Suttle was in the process of refinancing her home mortgage in order to pay off her ex-husband's interest in their marital home following their divorce." *First Amended Complaint*, ¶ 8 [Docket #17]. In their responsive pleading, "The defendants admit that, in 2016, Suttle wanted to obtain a loan to buy her ex-husband's interest in their former marital home." *Answer*, ¶ 8 [Docket #37]. *See also First Amended Complaint*, ¶ 9 [Docket #17]("Under the terms of their marital settlement agreement, Suttle needed to buy-out her ex-husband's interest in the

home and pay off the remaining mortgage by a certain date."); *Answer*, ¶ 33 [Docket #37]("The defendants admit that Suttle's loan was a one-year bridge loan. . . .".)

12. The loan Stephanie received was to buy-out her ex-husband's interest in their marital home. *First Amended Complaint*, ¶ 8 [Docket #17]. FSB admits the same. *Answer*, ¶ 8 [Docket #37]. Stephanie already owned the home with her ex-husband, so the loan was not for the acquisition or reacquisition of the home. Therefore, under the plain language of TILA and Regulation Z, Stephanie's transaction with FSB is not exempt from TILA's right of rescission.

### III. ALTHOUGH THE STATUTORY LANGUAGE IS UNAMBIGUOUS, THE OFFICIAL STAFF INTERPRETATIONS TO REGULATION Z ARE CONSISTENT AND RATIONAL.

13. Although the language of the statute is clear on its face, the Official Staff Interpretations remove all doubt. The Official Staff Interpretations of Regulation Z provide that a "residential mortgage transaction" does not include transactions where the consumer uses a loan to buy-out another joint-owner's interest in a property, and that the rescission rules apply to such a transaction. 12 C.F.R. Pt. 226, Supp. I, Subpt. A § 2(a)(24)(5)(i) and (ii). This is exactly what occurred here.

14. The Defendants suggest that the Court should disregard the Official Interpretations entirely. However, "[C]onsiderable respect is due 'the interpretation given [a] statute by the officers or agency charged with its administration.'" *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566(1980). "[The] traditional acquiescence in administrative expertise is particularly apt under TILA, because the Federal Reserve Board has played a pivotal role in 'setting [the statutory] machinery in motion . . . . Congress delegated broad administrative lawmaking power to the Federal Reserve Board when it framed TILA. The Act is best construed by those who gave it

5

substance in promulgating regulations thereunder. Furthermore, Congress has specifically designated the Federal Reserve Board and staff as the primary source for interpretations and application of truth-in-lending law."[2] *Id*.

15. "The Official Interpretations for Regulation Z were adopted in wholesale form, minus a few technical changes, from the Federal Reserve Board (FRB) Staff Commentary (also known as the "Official Staff Interpretations") on Regulation Z. *See* Truth in Lending (Regulation Z), 76 Fed.Reg. 79,768–01 (Dec. 22, 2011). (Before the CFPB assumed responsibility for Regulation Z, the Federal Reserve Board was charged with this task.) Courts give deference to the FRB Staff Commentary on Regulation Z unless the opinion is 'demonstrably irrational.' See *Hamm v. Ameriquest Mortgage Co.,* 506 F.3d 525, 528 (7th Cir.2007)." *Fridman v. NYCB Mortg. Co., LLC*, 780 F.3d 773, 776 (7th Cir. 2015). *See also Alexander v. Contl. Motor Werks, Inc*., 95 C 5828, 1996 WL 79403, at 4 (N.D. Ill. Feb. 16, 1996) ("It is well settled that the Federal Reserve Board's interpretation, construction, and application of TILA and Regulation Z are to be afforded great deference by the courts."); *Greisz v. Household Bank (Illinois)*, 8 F. Supp. 2d 1031, 1036 (N.D. Ill. 1998), *modified* (Aug. 6, 1998), *aff'd sub nom*. *Greisz v. Household Bank (Illinois), N.A.*, 176 F.3d 1012 (7th Cir. 1999) ("Additionally, official staff opinions of the Federal Reserve Board construing TILA and Regulation Z are binding unless they are demonstrably irrational.")(internal quotations omitted).

16. "Courts pay particular heed to the FRB Staff Commentary to TILA's regulations when evaluating an alleged TILA violation. The Supreme Court has held that 'deference is especially appropriate in the process of interpreting the Truth in Lending Act and Regulation Z and

---

[2] The Consumer Financial Protection Bureau now implements the Federal Truth in Lending Act, not the Federal Reserve Board. 12 C.F.R. § 1026.1.

… unless demonstrably irrational, Federal Reserve Board Staff opinions construing the Act or Regulation should be dispositive. In keeping with *Milhollin*, this court has deferred to the view of the FRB, as expressed in the Commentary, when we are called upon to interpret TILA." *Hamm v. Ameriquest Mortgage Co.,* 506 F.3d at 528 (7th Cir.2007) (internal citation omitted).

17. Unless demonstrably irrational, the Official Staff Interpretations should be considered dispositive. *Fridman v. NYCB Mortg. Co., LLC*, 780 F.3d 773, 776 (7th Cir. 2015). The Plaintiff's research reveals no case, nationwide, where any court found the Official Staff Interpretations on this issue to be irrational. What the Defendants suggest is unprecedented.

18. Far from being irrational, the Official Staff Interpretations are consistent with both the broad protective purposes of TILA and the plain language of the statute, as discussed above. The Court's September 9, 2020 order correctly applied both the plain language of the statute and the clear agency interpretations of the same.

### IV. APPLICABILITY OF THE LAW OF THE CASE DOCTRINE

19. In general, courts may correct prior interlocutory orders. FSB is effectively asking the Court to reverse its ruling where it denied FSB's motion to dismiss. *Response*, ps. 2, 3 [Docket #65]. In that order, this Court ruled that "Even if TFSB had provided the loan Stephanie requested, it would not have been exempt from TILA. More to the point, the consumer credit transaction reflected in the documents attached to defendants' motion is not a residential mortgage transaction and is therefore subject to Regulation Z, including the rescission rules of § 226.23. See 12 C.F.R. Pt. 226, Supp. I, Subpt. A § 226.2(a)(24)5(ii)." Opinion and Order Denying Defendant's Motion to Dismiss, p. 6 [Docket #33].

7

20. Although courts have discretion to correct prior orders, there is no reason to do so when the prior ruling was sound and correct. For the reasons argued above, there is no basis to reverse or vacate the September 9, 2020 order denying Defendant's motion to dismiss. There was no error here. Both the law, and this Court's ruling, were correct.

21. The law does not require banks to be charitable to their consumers or to offer favorable terms. What it does require is clear disclosures so that consumers can make informed decisions. If those disclosures are not provided, the statute provides remedies to unwind the transaction, including rescission.

22. The pleadings confirm that there were no disclosures made to Stephanie by FSB. The Defendants admit this. *Answer*, ¶ 37 [Docket #37]. When Stephanie attempted to rescind the transaction, the Defendants failed and refused to comply. *First Amended Complaint*, ¶¶ 42, 43, 44, 45, 46, 52, 57, 58 [Docket #17]. *See also Answer*, ¶¶ 42, 43, 44, 45, 46, 52, 57, 58 [Docket #37]. Judgment on the pleadings is therefore appropriate.

WHEREFORE, Plaintiff, STEPHANIE SUTTLE, respectfully requests that this honorable Court enter judgment on her behalf and against the Defendant, THE FEDERAL SAVINGS BANK, as to Count I and Count II of the Amended Complaint and grant such further relief as the Court deems just and appropriate under the circumstances.

                                                Respectfully Submitted,
                                                Plaintiff, Stephanie Suttle.

By:    /s/ John A. Romanucci, Esq.
          One of Her Attorneys

John D. Galarnyk, Esq. #6191543
Andrew J. Cunniff, Esq. #6308820

John A. Romanucci, Esq. #6333257
GALARNYK & ASSOCIATES, LTD.
55 W. Monroe Street, Suite 3600
Chicago, Illinois 60603
312-441-5800
John@galarnykltd.com
Andrew@galarnykltd.com
Johnr@galarnykltd.com